UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

CHECKER MOTORS CORPORATION,                    Case No. GK 09-00358
 a Delaware Corporation,                                        Chapter 11


        Debtor.
_____/


THOMAS RICHARDSON, LIQUIDATING TRUSTEE OF
 CHECKER MOTORS CORPORATION,

        Plaintiff,                                              Adv. Proc. No. 11-80015

v.

CHECKER ACQUISITION CORPORATION,

        Defendant.
_____/


THOMAS RICHARDSON, LIQUIDATING TRUSTEE OF
 CHECKER MOTORS CORPORATION,

        Plaintiff,                                              Adv. Proc. No. 11-80016

v.

ALLAN R. TESSLER,

        Defendant.
_____/

THOMAS RICHARDSON, LIQUIDATING TRUSTEE OF
CHECKER MOTORS CORPORATION,

        Plaintiff,                            Adv. Proc. No. 11-80018

v.

CHRISTOPHER MARKIN,

        Defendant.

_____/

THOMAS RICHARDSON, LIQUIDATING TRUSTEE OF
CHECKER MOTORS CORPORATION,

        Plaintiff,                            Adv. Proc. No. 11-80019

v.

DAVID MARKIN,

        Defendant.

_____/

### OPINION REGARDING DEFENDANTS' MOTIONS TO DISMISS COMPLAINTS WITH PREJUDICE AND PLAINTIFF'S MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS

Appearances:

John T. Piggins, Esq., Grand Rapids, Michigan, attorney for Thomas Richardson, Liquidating Trustee of Checker Motors Corporation, Plaintiff.

Timothy A. Fusco, Esq. and Eric D. Carlson, Esq., Detroit, Michigan, attorneys for Checker Acquisition Corp., Allan R. Tessler, Christopher Markin, and David Markin, Defendants.

### I. JURISDICTION

This court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. This case

and all related proceedings have been referred to this court for decision. 28 U.S.C.

2

§ 157(a); Local Rule 83.2(a) (W.D. Mich.). These adversary proceedings are statutory core proceedings because the plaintiff seeks to determine, avoid or recover fraudulent conveyances or preferences.  28 U.S.C. § 157(b)(2)(F) and (G).

Notwithstanding the recent Supreme Court decision, Stern v. Marshall, __ U.S. __, 131 S. Ct. 2594 (2011), this court tentatively believes it is constitutionally authorized to enter final orders in these adversary proceedings.  See Tibble v. Wells Fargo Bank, N.A. (In re Hudson), 455 B.R. 648, 656-67 (Bankr. W.D. Mich. 2011) (the Stern decision is extremely narrow; "[e]xcept for the types of counterclaims addressed in Stern v. Marshall, a bankruptcy judge remains empowered to enter final orders in all core proceedings"). However, at this juncture in these adversary proceedings, no final order is contemplated or now necessary and the issue addressed by Stern may be revisited in the future.

## II.  ISSUES

Do the complaints filed by Thomas Richardson, as Liquidating Trustee of Checker Motors Corporation (and not individually) ("Plaintiff"), plead sufficient plausible facts to survive the defendants' motions to dismiss?  Should one or more of the Plaintiff's complaints be dismissed for failure to state a cause of action?  FED. R. BANKR. P. 7012 (incorporating by reference FED. R. CIV. P. 12(b)(6)).  Should the Plaintiff be permitted to amend his originally filed complaints to augment the factual underpinnings of his various asserted causes of action?

## III.  PROCEDURAL HISTORY

On January 16, 2009, Checker Motors Corporation ("Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On January 23, 2009, the United States Trustee appointed the Committee of Unsecured Creditors ("Committee").

3

On November 22, 2010, the Debtor filed its Plan of Liquidation ("Plan") and a proposed Disclosure Statement. The Disclosure Statement was approved at a hearing on January 7, 2011. The Plan contemplated that all remaining assets of the Debtor, including avoidance actions under Chapter 5 of the Bankruptcy Code[1], would be assigned to a Liquidating Trust for the benefit of the creditors of the bankruptcy estate.

On December 29, 2010, the Committee filed a motion seeking approval of a stipulation of the Debtor and the Committee to approve the granting of standing to the Committee to pursue avoidance actions under Chapter 5 of the Bankruptcy Code pending the possible appointment of a Liquidating Trustee under the Debtor's Plan. On January 11, 2011, this court entered an order granting the Committee the requested standing. On January 12, 2011, this court entered its order approving the Disclosure Statement. (Base case, Dkt. No. 566.)

On January 14, 2011, the Committee filed the four separate adversary proceedings against Checker Acquisition Corp. ("CAC"), Allan R. Tessler ("Tessler"), Christopher Markin ("C. Markin"), and David Markin ("D. Markin") (collectively "Defendants") which are now pending. All of the complaints sought to avoid and recover fraudulent transfers pursuant to §§ 548, 544(b), and 550, and the Michigan Fraudulent Transfer Act, Mich. Comp. L. Ann. § 566.31, et. seq. The complaints against Tessler, C. Markin, and D. Markin also sought to avoid and recover preferential transfers pursuant to §§ 547 and 550.

On March 11, 2011, a confirmation hearing was held. On March 31, 2011, an order was entered confirming the Debtor's Plan with modifications. In accordance with the

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive. The specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ___."

4

confirmation order, the Committee's avoidance actions were assigned to the Liquidating Trust established under the Debtor's Plan, and the Plaintiff succeeded to the Committee's standing to pursue the four pending adversary proceedings.

On February 17, 2011, the Defendants filed their respective motions to dismiss. Relying upon Federal Rule of Civil Procedure 12(b)(6), they each asserted that the Plaintiff's respective complaint failed to meet the Supreme Court's new stringent pleading standard. See, Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).  The Defendants all assert the complaints are fatally defective because they contain no more than formulaic recitations of the statutory elements for avoidance of fraudulent and preferential transfers. Of course, the Plaintiff opposes the motions to dismiss.  A hearing on the motions to dismiss was held on May 23, 2011.  While not conceding that the complaints are deficient, the Plaintiff requests, both orally and in writing, that he be permitted to amend the complaints.  No written motion to amend was filed prior to the May 23, 2011, hearing.  Written motions to amend were first filed after the court took the Defendants' dismissal motions under advisement.[2]

During July 2011, while the Defendants' motions to dismiss remained under advisement, the Plaintiff filed written motions for leave to file amended complaints, with attached proposed amended complaints. (A.P. 11-80015, 11-80016, and 11-80018, Dkt. Nos. 12; A.P. 11-80019, Dkt. No. 13.)  This court issued a notice of hearing regarding the motions to amend for September 9, 2011. (A.P. 11-80015, 11-80016, and 11-80018, Dkt.

---

[2] On May 23, 2011, the parties were advised that because of this court's extremely demanding docket, an opinion would not be issued for approximately 90 to 120 days.

5

Nos. 13; A.P. 11-80019, Dkt. No. 14.)  The Defendants timely filed objections, claimed reservations of rights, and requested an adjournment of the hearing.  (A.P. 11-80015, 11-80016, and 11-80018, Dkt. Nos. 16; A.P. 11-80019, Dkt. No. 17.)  Over objection by the Plaintiff, the hearing was rescheduled by the court.

At the adjourned October 21, 2011, hearing, this court expressed concerns because the Plaintiff failed to file written motions to amend prior to the *first* hearing on the Defendants' motions to dismiss.  The Plaintiff's delay resulted in two hearings.  This court, therefore, ordered the Defendants' attorneys to file an itemization of attorney fees and expenses covering the time period from the conclusion of the first hearing on May 23, 2011, to the conclusion of the October 21, 2011, hearing.  The plaintiff's attorney was given an opportunity to object to the reasonableness of the Defendants' asserted attorney' fees.[3]

A. *General Substance of the Original Complaints*.

In each of his original complaints, the Plaintiff asserted that transfers had been made from the Debtor to the Defendants within six years prior to the filing of the complaint, and that at the time of the transfers the Debtor was "indebted to its pension funds and to employees and retirees under its collective bargaining agreements among other things. Claims against the Debtor, exceeding $40 million, have been filed on behalf of the parties referred to[.]  In light of these obligations and others, the Transfer took place while the Debtor was insolvent or Debtor became insolvent shortly after the Transfer was made."

---

[3] Defendants have claimed they incurred fees and expenses in the amount of $40,140.45.  (A.P. 11-80015, Dkt. No. 19, A.P. 11-80016, Dkt. No. 21, A.P. 11-80018, Dkt. No. 20, A.P. 11-80019, Dkt. No. 22.)  The Plaintiff has responded that the fees are much too high.  (A.P. 11-80015, Dkt. No. 20, A.P. 11-80016, Dkt. No. 22, A.P. 11-80018, Dkt. No. 21, A.P. 11-80019, Dkt. No. 23.)

(A.P. Dkt. No. 1.)  The Plaintiff then went on to merely recite the statutory elements to avoid fraudulent and preferential transfers.  There were almost *no* operative facts stated in any of the complaints.  The only factual allegations asserted were as follows:

1. *Checker Acquisition Corporation.*

The original complaint against Checker Acquisition Corporation ("CAC") plead only that CAC is a Delaware corporation and that on December 21, 2007, the Debtor assigned the rights to its trademark flag design to CAC.

2. *Allan R. Tessler.*

The original complaint against Allan R. Tessler ("Tessler") asserted only that Tessler is resident of the State of Wyoming, and received a number of transfers which were identified on attached exhibits.  The attached exhibits simply listed 49 checks made payable to Tessler, one in the amount of $16,666.66, ten in the amount of $6,250, and the remainder in the amount of $8,333.33.  The checks were dated from February 20, 2005 to January 13, 2009.

3. *Christopher Markin.*

The original complaint against Christopher Markin ("C. Markin") asserted only that he is a resident of Michigan, was an officer and shareholder of the Debtor, and had received a bonus of $50,000 in December 2008.

4. *David Markin.*

The original complaint against David Markin ("D. Markin") asserted that he resides in Michigan, was a director and beneficial shareholder of the Debtor, and was an insider of the Debtor as the term is defined by § 101(31).  It further asserted that in the six years prior to the filing of the complaint, D. Markin had received numerous transfers which were

7

listed on attached exhibits. Those exhibits listed various payments by checks, as well as payments to various clubs and transportation providers.

B. *Contents of the Amended Complaints*.

In the proposed amended complaints, the Plaintiff reiterates the statutory elements for avoidance of fraudulent and preferential transfers. However, in his new version, the Plaintiff attempts to summarize the financial condition of the Debtor beginning in 2001 when it began to experience "severe operational losses" and to the time the Debtor filed its bankruptcy case. Each of the Plaintiff's amended complaints states the Debtor's yearly losses and profits, as well as the Debtor's equity per the year-end balance sheets. The proposed amended complaints allege an underfunding of the Debtor's pension plan for many of its union employees at the end of each calendar year, a claim of $40,799 filed by National Integrated Group Pension Plan ("NIGPP") for the Debtor's withdrawal liability from the NIGPP, and a proof of claim filed by Pension Benefit Guaranty Corporation ("PBGC") in an amount of $1,587,336 for unfunded pension liability. Additionally, each amended complaint asserts that while the Debtor's schedules show the Debtor's assets had a net book value of $18,945,524.76, the actual value was substantially less because, among other things, the Debtor's receivables were subject to approximately $1.9 million in offsetting claims by its customers, and claims exceeding $40 million have been filed against the Debtor in this bankruptcy case. Therefore, the Plaintiff asserts that the value of the Debtor's assets was less than the amount of its debts and the Debtor was insolvent at the time the transfers were made to the Defendants.

Further, the Plaintiff alleges additional facts regarding the transfers made by the Debtor to each of the Defendants as follows:

8

1. *Checker Acquisition Corporation.*

The amended complaint against CAC alleges that D. Markin was an officer, director, beneficial shareholder and person in control of CAC as well as the Debtor, and that the principal places of business of CAC and the Debtor were identical. The amended complaint alleges that prior to December 21, 2007, the Debtor was the sole owner of all right, title and interest in and to U.S. Trademark No. 06049221 which is the CHECKER plus checkerboard flag design mark ("Trademark"), and that on December 21, 2007, the Debtor assigned its entire right, title and interest in the Trademark "together with that part of the good will of the Debtor's business connected with and symbolized by the Trademark and the right to sue and recover damages and profits for third-party infringements of the Trademark" to CAC. (A.P. 11-80015, Dkt. No. 12, Ex. 1.) The Plaintiff alleges that the Debtor received no consideration from CAC in exchange for the assignment of the Trademark. The Plaintiff also alleges that D. Markin caused the Debtor to make the transfer while knowing that the transfer did not benefit the Debtor. Attached to the amended complaint is the assignment of the Trademark showing that it was signed by D. Markin as President of both the Debtor and CAC.

2. *Allan R. Tessler.*

The Plaintiff's amended complaint against Tessler alleges that he resides in the State of Wyoming and was an officer and director of the Debtor who was not an employee of the Debtor between 2005 and the Debtor's bankruptcy filing. According to the amended complaint, Tessler spent little time at the Debtor's facility in Kalamazoo, Michigan, and he did nothing to benefit the Debtor between 2005 and the petition date, and devoted little or no time to assisting the Debtor during that time period. Notwithstanding the lack of

9

services provided by Tessler, it is alleged that the Debtor paid Tessler $395,833.20 between January of 2005 and the bankruptcy filing. These payments, the Plaintiff alleges, were excessive, not for valid business purposes, and did not benefit the Debtor. Similarly to the original complaint, the Plaintiff attached exhibits listing 49 checks made payable to Tessler, one in the amount of $16,666.66, ten in the amount of $6,250, and the remainder in the amount of $8,333.33. The checks were dated from February 20, 2005 to January 13, 2009.

The proposed amended complaint adds a count for alleged breach of fiduciary duties. The Plaintiff asserts that Tessler, as a director and officer of the Debtor, owed fiduciary duties to the Debtor and the Debtor's creditors at the time he received the transfers. It is also alleged that the transfers were made with no rational business purpose, that Tessler lacked good faith, and that he caused the Debtor to make the transfers for his own personal gain.

3. *Christopher Markin.*

In the amended complaint against C. Markin, the Plaintiff asserts that he is a resident of Michigan who was an officer, employee and beneficial shareholder of the Debtor, and the son of D. Markin. According to the complaint, the Debtor paid C. Markin $91,379 in 2006, $96,146 in 2007, and $145,971 in 2008. The $50,000 payment increase from 2007 to 2008 is alleged to be a "one-time bonus" that was paid in late 2008.

The amended complaint asserts that C. Markin undertook no additional job responsibilities in exchange for the bonus, he did not provide services to the Debtor beyond those provided in 2007 in exchange for the bonus, he was not a party to a contract which required payment of the bonus and, finally, that payment of the bonus did not benefit

10

the Debtor.

4. *David Markin.*

In the amended complaint against D. Markin, the Plaintiff alleges that he is and was a resident of Palm Beach, Florida and was an officer and director of the Debtor who controlled the Debtor. D. Markin is alleged to be the Chief Executive Officer, one of two directors, and the majority beneficial shareholder of the Debtor. The complaint alleges that between January of 2005 and the bankruptcy filing, D. Markin was present at the Debtor's facility in Kalamazoo, Michigan for only one to three days per month. When not present at the Debtor's business, his contact with the Debtor was limited to phone calls. However, in 2005, the Debtor paid D. Markin $330,454 in wages and $74,115.74 in fringe benefits, $9,250 of which were attributable to an automobile and $64,865.74 for payment of D. Markin's club dues. During 2006, the Debtor paid D. Markin $199,254 in wages and $66,264.90 in fringe benefits, $9,250 for an automobile and $57,014.90 for payment of club dues. In 2007, the Debtor paid D. Markin $206,539 in wages and $74,905.88 in fringe benefits, $9,250 for an automobile and $65,655.88 for payment of club dues. In 2008, the Debtor paid D. Markin $166,575 in wages and $54,906.43 in fringe benefits, $9,250 for an automobile and $50,616.43 for payment of club dues. (Based upon the court's calculations, total wages and benefits during the four-year period of 2005 to 2008 equals approximately $1,173,014.95.)

The club dues paid for D. Markin included membership costs and fees for the Kalamazoo Country Club, the Park Club in Kalamazoo, Michigan, a country club in Palm Beach, Florida, and yet another country club in Vermont. The complaint also alleges that these club memberships did not benefit the Debtor because D. Markin did not entertain

11

customers or employees of the Debtor at any of the clubs or use the memberships for purpose connected to the Debtor's business. The complaint alleges that the automobile paid for by the Debtor was not used for any business purpose. The complaint also summarizes other payments made by the Debtor to, or for the benefit of, D. Markin for non-business purposes: an apartment in New York City, the use of a limousine service, the use of a charter airplane, and an office located in Palm Beach, Florida. The complaint and exhibits attached detail $868,080.12 in fringe benefits and additional expenses paid to or on behalf of D. Markin by the Debtor between January of 2005 and December 31, 2008. The Plaintiff asserts that all of these payments constitute avoidable fraudulent transfers or preferential transfers.

Finally, like the amended complaint against Tessler, the amended complaint against D. Markin adds a new count for alleged breach of fiduciary duties. The Plaintiff asserts that as a director and officer of the Debtor, D. Markin owed fiduciary duties to the Debtor and the Debtor's creditors at the time he received the transfers summarized in the proposed amended complaint.

## IV.  DISCUSSION

### A. *The Rule.*

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss adversary proceedings. See FED. R. BANKR. P. 7012(b) (incorporating FED. R. CIV. P. 12(b)(6) by reference). Rule 12(b)(6) permits a defendant to move for dismissal of a complaint prior to filing a responsive pleading. The rule provides, in pertinent part:

> (b) **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the

12

following by motion:

...

(6) failure to state a claim upon which relief can be granted;

....

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

"Such a motion challenges the legal theory of the complaint, not the sufficiency of any evidence which may be discovered." Rogan v. Litton Loan Servicing, L.P. (In re Collins), 456 B.R. 284, 289 (B.A.P. 6th Cir. 2011) (citing Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993)). "'The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premise and destined to fail[.]'" Id. (quoting Advanced Cardiovascular Sys., Inc., 988 F.2d at 1160, citing Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1832 (1989)).

B. The Old Conley v. Gibson Standard.

In 1957, in a class action discrimination case, the Supreme Court established the prior standard for dismissal under Rule 12(b)(6). Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957). In Conley, the Court held that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. The Court explained that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47.

13

(footnote omitted.)  Under the Conley standard it was very difficult (one might say "nearly impossible") to prevail on a Rule 12(b)(6) motion to dismiss.

## C. The New Standard Requiring Assertion of Plausible Facts.

In 2007, in an antitrust case, the Supreme Court adopted a new standard for dismissal under Rule 12(b)(6).  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In Twombly, the Court acknowledged that Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (quoting Conley, 355 U.S. at 47.)  However, the Court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555 (internal citations omitted.)  Based upon that standard, the Court then concluded that the complaint in Twombly must be dismissed because the plaintiffs had not "nudged their claims across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 570.

Putting to rest any debate as to whether the new pleading standard was limited to antitrust cases, the Court reiterated the new pleading standard two years later in a case involving an assertion of deprivation of constitutional rights by government officials who relied on the qualified immunity privilege.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009).  In Iqbal, the Supreme Court summarized the pleading requirement as follows: "When there are well-pleaded factual allegations, a court should assume their veracity and

14

then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950. The Supreme Court stated that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

In the wake of Twombly and Iqbal, the Sixth Circuit Court of Appeals has applied the current pleading standard for dismissal under Rule 12(b)(6). See, e.g., Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365 (6th Cir. 2011); Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.), 583 F.3d 896 (6th Cir. 2009). In accordance with the new more demanding pleading standard, the Sixth Circuit has explained that when considering a Rule 12(b)(6) dismissal motion, a court must construe a complaint in the light most favorable to the plaintiff, the allegations of the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. Tam Travel, 583 F.3d at 903. "'[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" Tam Travel, 583 F. 3d at 903 (quoting Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007)). A court is not required to "accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegation will not suffice." Tam Travel, 583 F.3d at 903 (internal citations and quotations omitted). The complaint must state a claim which is plausible on its face; "plausibility is not the same as probability, but rather 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" Center for Bio-Ethical Reform, 648 F.3d at 369 (quoting Iqbal, 129 S. Ct. at 1949).

In another adversary proceeding, this court focused upon alleging "plausible" facts. Lefkowitz v. Mich. Trucking, LLC (In re Gainey Corp.), 447 B.R. 807, 820-21 (Bankr. W.D. Mich. 2011).  Such a focus is consistent with Supreme Court and Sixth Circuit precedent.

D. *The Original Complaints Failed to Meet the New Pleading Standard.*

The Plaintiff's original complaints contained virtually *no* operative facts.  The Plaintiff merely formulaically recited the statutory elements of fraudulent and preferential transfer claims.  It is easy for this court to determine that each of the Plaintiff's original complaints failed to meet the new pleading standard as set forth by the Supreme Court in Twombly and Iqbal.

E. *The Oral "Motion" to Amend.*

Federal Rule of Bankruptcy Procedure 9013, which mirrors Federal Rule of Civil Procedure 7(b)(1)[4], provides, in pertinent part that a "request for an order, except when an application is authorized by these rules, shall be by written motion, unless made during a hearing.  The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought."  Despite having been made during the first hearing on the Defendants' motions to dismiss, the court believes that the Plaintiff's *oral* request to amend his complaints was insufficient.

The requirement for a written motion in Rule 7(b)(1) and Bankruptcy Rule 9013 serves two functions, a record-making function and a notice function.  In re Bistrian, 184

---

[4] "The Advisory Committee that wrote the Bankruptcy Rules modeled Rule 9013 after Rule 7(b)(1) of the Federal Rules of Civil Procedure."  In re Bistrian, 184 B.R. 678, 682 (E.D. Penn. 1995) (citing 9 Lawrence P. King, Collier on Bankruptcy ¶ 9013.02[1] (15th ed. rev. 1994)).  Rule 7(b)(1) provides that a motion must "(A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought."

16

B.R. 678, 682-83 (E.D. Penn. 1995) (citing Taragan v. Eli Lilly & Co., 838 F.2d 1337 (D.C. Cir. 1988); Rauch v. United Instruments, Inc., 405 F.Supp. 435 (E.D. Pa. 1975)). The record-making function permits the court and the parties to determine what occurred. Bistrian, 184 B.R. at 682. The notice function permits the opposing party and the court to prepare adequately. Id. "By channeling litigants into a written, rather than oral, discourse with each other and the court, Rule 7(b)(1) assures that parties will know of contentions and requests in a litigation and will have the opportunity to oppose - or at least address - such views and demands." Id.

Some illustrations of types of requests which need not be in writing include motions to exclude or strike evidence, motions for judgment as a matter of law, and motions for mistrial. 5 Arthur R. Miller & May Kay Kane, Federal Practice and Procedure § 1193 (3d ed. 2011) (citing Hammond-Knowlton v. Hartford-Conn. Trust Co. of Hartford, Conn., 26 F.Supp. 292, 293 (D. Conn. 1939)). However, an argument on a motion is not tantamount to a trial or hearing for purposes of the exception in Rule 7(b)(1) and Bankruptcy Rule 9013 permitting oral motions to be made in certain circumstances. Shapiro v. Freeman, 38 F.R.D. 308, 309 n.1 (S.D.N.Y. 1965) (citing Hammond-Knowlton v. Hartford-Conn. Trust Co. of Hartford, Conn., 26 F.Supp. 292 (D. Conn. 1939)). In Hammond, the district court perceptively stated:

> An oral argument on a motion previously made is not, in my opinion, the 'hearing' at which the necessity for reducing motions to writing may be obviated. Motions made at a hearing are obviously such as are incidental to the hearing itself, such as motions to exclude evidence, or for a directed verdict, or for a mistrial, etc. In other words, they are such motions as are recorded in the minutes of the trial or hearing, and it is for that reason that the motion need not be reduced to writing and notice thereof given.

17

> Any other construction of the rule would lead to chaos in motion procedure. A party, for instance, might make a motion on notice, for the inspection of a document, and at the hearing thereof, and without any notice whatsoever, include a further motion to punish somebody for contempt of court. Therefore, the court will confine itself to the motions as filed.

Hammond-Knowlton, 26 F.Supp. at 293. Likewise, this judge does not favor "sandbagging," "bushwacking," or other types of unnecessary litigation surprise, especially in those instances when a written motion could easily have been filed and served prior to the hearing. Cf. FED. R. BANKR. P. 1001 (the bankruptcy rules *shall* be construed to "secure the *just*, speedy and inexpensive determination of every case and proceeding.").

Motions commonly permitted to be made orally, such as those to exclude or strike evidence, are motions which typically require no advance notice to the opposing party and, therefore, obviate the need for a formal, written motion. In other circumstances, however, such as the motions to amend first made during argument on the Defendants' motions to dismiss, the far better practice is to require motions to be filed in writing. Taragan, 838 F.2d at 1341; Jones v. Uris Sales Corp.,373 F.2d 644, 648 (2d Cir. 1967). Given the circumstances and procedural background in these adversary proceedings, if called upon to make a decision, this judge would have denied the Plaintiff's oral request to amend. However, because of the Plaintiff's subsequent written motions, the court is not required to now make this call.

F. *The Written Motions to Amend.*

Although the Plaintiff's oral motion to amend his complaints was insufficient, the Plaintiff remedied his procedural oversight or omission by filing formal written motions to amend, with attached amended complaints, *before* this court issued a ruling on the

18

Defendants' motions to dismiss. Whether to permit a plaintiff to amend a complaint is within a court's sound discretion. Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 572 (6th Cir. 2008) ("We review a district court's decision whether to permit a plaintiff to amend its complaint for abuse of discretion."). FED. R. BANKR. P. 7015 (incorporating FED. R. CIV. P. 15) (a court "should freely give leave to amend when justice so requires").

The Sixth Circuit Court of Appeals has explained that "where a more carefully drafted complaint might state a claim, *a plaintiff must be given at least one chance to amend the complaint* before the district court dismisses the action with prejudice." U.S. ex. rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 644 (6th Cir. 2003) (emphasis added); see also Lyon v. Rappaport (In re ClassicStar, LLC), 2011 WL 652744, at *5 (B.A.P. 6th Cir. Feb. 24, 2011). However, denial of leave to amend may be appropriate where the proposed amendment would be futile. Kottmyer v. Maas, 436 F.3d 684, 692 (6th Cir. 2006).

Futility is not an issue with these proposed amended complaints. The buttressed factual allegations result in far more than mere formulaic recitation of the statutory elements for avoidance of the asserted fraudulent and preferential transfer causes of action. Construing the amended complaints in the light most favorable to the Plaintiff, accepting the allegations of the amended complaints as true, and drawing all reasonable inferences in favor of the Plaintiff, as required, the amended complaints state facially actionable claims for avoidance and recovery of fraudulent and preferential transfers. In stark contrast to the original complaints, the amended complaints meet the revised procedural requirement enunciated by the Supreme Court in Twombly and Iqbal. Because this is the first time a proper request was made, the court grants the Plaintiff's written

19

motions to amend his original complaints.

### G. *Possible Prejudice to Defendants*.

Denial of leave to amend may also be appropriate where there is undue delay on the part of the movant. Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir. 2002). The Plaintiff did not file his written motions to amend prior to the *first* hearing on the Defendants' motions to dismiss and, as previously stated, the Plaintiff's delay resulted in two hearings, rather than one. Therefore, the Defendants' attorneys traveled to and attended two hearings. The court finds that attendance at one of the hearings should not have occurred.

While this court feels it is inappropriate to deny the motion for leave to amend on the basis of this delay, and declines to do so, the court recognizes the limited prejudice caused by the Plaintiff to the Defendants. To consider possible prejudice, the court requested the Defendants' attorney file an itemization of fees and expenses incurred between the first hearing on the Defendants' motions to dismiss and the second hearing on the Plaintiff's written motions to amend. Defense counsel submitted the requested information. Upon reflection, and after careful review of the itemized statement submitted, the court believes it is appropriate to award fees and expenses incurred by the Defendants for travel time and court time attributable only to the second argument that took place on October 21, 2011. Legal services provided to the Defendants between the first and second hearings would have been necessary to prepare for a hearing on the Plaintiff's motions to amend regardless of the Plaintiff's delay in filing the written motions to amend.

Defendants' attorney Carlson traveled to court, appeared at the hearing and returned to his office on October 21, 2011. These legal services were necessitated solely

20

by the Plaintiff's, and his attorneys', unjustified delay in seeking to amend the four complaints. If written motions had been timely filed before the first hearing on May 23, 2011, the Defendants' attorney would have made only one trip to Grand Rapids to attend one hearing, not two hearings. Relying upon the Defendants' separate itemization of requested attorneys' fees, the extra fees are[5]:

1. *Allan R. Tessler.*

10/21/11    Eric Carlson - - billing attorney.

Prepare for, travel to and appear at Court hearing on
Plaintiff's Motion to Amend the Complaint.        2.5    $737.50

2. *David Markin.*

10/21/11    Eric Carlson - - billing attorney.

Prepare for, travel to and appear at Court hearing
regarding Plaintiff's Motion to Amend the Complaint.  2.5    $812.50

3. *Christopher Markin.*

No attorneys' fees requested.

4. *Checker Acquisition Corporation.*

10/21/11    Eric Carlson - - billing attorney.

Prepare for, travel to and appear at Court hearing
regarding Plaintiff's Motion to Amend the Complaint.  1.0    $325.00

Expenses were not pro-rated among the Defendants. Expenses were billed only to Tessler (143 miles) totaling $71.50.

The court finds the fees and expenses summarized above to travel to and attend

---

[5] For each Defendant, the amount of the itemized attorneys' fees differ. The Defendants' attorneys may have negotiated disparate fee agreements or may have exercised billing discretion resulting in different fees charged to each defendant.

21

the second hearing on October 21, 2011, resulted from the Plaintiff's unjustified delay in filing formal written motions to amend. The total fees and expenses to be paid to Defendants' attorneys are $1,946.50. The Plaintiff shall pay this amount as an expense of administration within fifteen (15) days.[6]

## H. *The Plaintiff's "Relation Back" Request.*

In his motions for leave to amend, the Plaintiff seeks an order that the amended complaints relate back to the date of the original complaints. The court declines to rule on this portion of the Plaintiff's motion because it is premature. If the Defendants file a motion to dismiss the amended complaints, e.g. because the statute of limitations has expired on one or more of the Plaintiff's claims, the issue will be heard and determined at the appropriate time after notice. It is possible that the restated causes of action are timely and the "new" causes of action are untimely. In any event, affirmative defenses are waivable if not asserted.[7]

## V. CONCLUSION

The Plaintiff's motions for leave to amend his complaints are GRANTED. The Plaintiff is ordered to reimburse Defendants' fees and expenses (payable to Defendants'

---

[6] No issue is presently before the court as to whether these fees and expenses should be paid personally by the Plaintiff or by the Plaintiff's attorneys. Also, in the event that the Defendants have already paid their attorney fees for the services provided, the Defendants and the Defendants' attorneys will decide whether the payment shall be divided and remitted to each Defendant or whether a credit or credits shall be given.

[7] As of January 1, 2012, the bankruptcy judges of this district will rotate the cities in which they preside over pending and future filed cases. This judge will relinquish cases, contested matters, and adversary proceedings in Kalamazoo and become responsible for the Lansing cases. If, and when, the "relation back" issue becomes ripe for decision, it should be heard by the judge who will preside over this case and these adversary proceedings.

22

attorneys) in the amount of $1,946.50 within fifteen (15) days.  One combined order shall be entered in each adversary proceeding accordingly.

The Defendants' motions to dismiss the original complaints are DENIED.


Dated this  11ᵗʰ day of January, 2012
at Grand Rapids, Michigan

Honorable James D. Gregg
Chief United States Bankruptcy Judge

23